Filed 8/25/21  Leinen v. Carlton CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| HENRY E. LEINEN, <br><br>     Plaintiff, Cross-Defendant and Respondent, <br><br> v. <br><br> DENNIS CARLTON, <br><br>     Defendant, Cross-Complainant and Appellant. | H047030 <br> (Monterey County <br> Super. Ct. No. 16CV003850) <br><br> ORDER MODIFYING OPINION <br> AND DENYING REHEARING <br> [NO CHANGE IN JUDGMENT] |

THE COURT:

The petition for rehearing filed on behalf of appellant Dennis Carlton is denied. Appellant's alternative petition for modification of the opinion is granted in part and otherwise denied.

It is ordered that the opinion filed July 30, 2021, be modified as follows:

On page 3, second full paragraph, after "stating that (1)," insert the following:

he was advised on March 21 by his doctor "that he was not to travel due to [an] injury to his foot"; (2) he first became aware of the circumstances necessitating the continuance on March 21 as a result of this advice from his doctor; (3)

1

On page 3, second full paragraph, after "scheduled for April 4," delete "; (2)" and insert the following:

in Ogden, Utah; (4)

On page 3, second full paragraph, after "from his home';" delete "(3)" and insert the following:

(5)

On page 3, second full paragraph, after "for May 23;" delete "(4)" and insert the following:

(6)

On page 3, second full paragraph, after "on June 10;" delete "(5)" and insert the following:

(7)

On page 3, second full paragraph, after "at that time," insert the following:

; (8) on March 21, Carlton sent an e-mail to Leinen explaining the circumstances and requesting a stipulation to continue the trial; (9) Leinen declined to stipulate to a continuance; and (10) Leinen thereafter filed a notice of unavailability advising that he was not available to receive any court notices from March 25 to April 1.

On page 4, at the end of the first full paragraph, insert a footnote reading as follows:

In declining to stipulate to the continuance in response to the e-mail request by Carlton, Leinen advised Carlton on March 21 that he would oppose a continuance, stating "I would require a doctor's note stating that you are [too] ill to face justice."

2

On page 12, following the second paragraph and before the paragraph commencing with "Carlton identifies," insert the following:

In his application to continue trial, Carlton cited rule 3.1332(c) and identified generally the grounds for continuance stated under that rule (e.g., unavailability of party due to illness, unavailability of an essential witness, unavailability of counsel).  He did not, however, identify the specific grounds of rule 3.1332(c) that applied to his particular case.  Because Carlton emphasized in his application, however, that his medical condition prevented him from traveling to San Jose for the trial, it may be inferred that his application was based principally upon the unavailability of a party due to illness under rule 3.1332(c)(2).

On page 13, first partial paragraph, delete the last two sentences, commencing with "As we will discuss."

On page 13, first full paragraph, after the first sentence, delete "He" and insert the following:

Although Carlton did not specifically request a continuance under rule 3.1332(c)(1) based upon his unavailability, he

On page 13, first full paragraph, before the sentence commencing with "Carlton therefore," insert the following:

On appeal, Carlton argues that he himself was an essential witness because he had previously prepared a declaration in support of his cross-complaint.  But he did not identify himself as an essential witness in his application.  Nor did he make a showing in his application as to substance or the materiality of the evidence he would provide at the prove-up hearing.

3

On page 13, first full paragraph, after the last sentence, insert the following:

(See *People v. Lopez* (1997) 52 Cal.App.4th 233, 251 [" '[o]n all motions the burden is on the moving party' "].)

On page 13, second full paragraph, delete "had no application to Carlton's application to continue.  Since Carlton was representing himself when he filed his application, "[t]he unavailability of trial counsel" circumstance was obviously inapplicable." and insert the following:

did not support the granting of Carlton's application to continue.  Although Carlton did not make the argument below, he briefly contends on appeal that because he was representing himself when he filed his application, "[t]he unavailability of trial counsel" circumstance applied.  Even were we to assume this argument has legal merit, Carlton's claimed unavailability to appear at trial to represent himself is subsumed by the primary ground upon which we believe Carlton based his application below, namely, party unavailability due to illness (rule 3.1332(c)(2)), which is addressed, *post*.

On page 14, first full paragraph, in the first sentence, delete "3.1332(c)(1) provided the only arguable" and insert the following:

3.1332(c)(2) provided the principal

On page 14, second full paragraph, after the first sentence, insert the following:

Beyond his own statements about his medical concerns and his hearsay statement as to what an unnamed doctor told him,

On page 21, first partial paragraph, after sentence ending with "guarded against.' " insert the following:

4

(See *Corns v. Miller* (1986) 181 Cal.App.3d 195, 200 ["moving party . . . has the burden of proving every fact essential to the relief requested"].)

On page 21, second full paragraph, first line, after "fails to," insert the following: adequately

On page 21, second full paragraph, delete the text from "But he fails" to the end of the paragraph, and insert the following:

But he provides no convincing explanation of how either statutory ground applies here, and he provides no apposite legal authority that supports his appellate claim.

On page 23, after the first full paragraph, insert the following new paragraphs:

Carlton argues that *Denton v. City and County of San Francisco* (2017) 16 Cal.App.5th 779 (*Denton*) supports his position that the trial court here abused its discretion in denying the new trial motion. In *Denton*, the defendants filed a motion for summary judgment for which the original hearing was continued several times over a seven-month period due to outstanding discovery issues; the hearing was ultimately scheduled for September 25, 2015. (*Id.* at p. 783.) The parties had a formal mediation session one week before the plaintiff's summary judgment opposition was due. (*Ibid.*) The parties continued discussions after the mediation, and the plaintiff's attorney filed a notice of conditional settlement on September 14 (the day the opposition, as extended by the defendants while discussions proceeded, was due). (*Ibid.*) Shortly thereafter, the situation for the plaintiff devolved through a series of occurrences, including: the plaintiff discharged his attorney on September 16; after a series of communications, defense counsel concluded that the plaintiff had repudiated the negotiated settlement (which the plaintiff denied); in one such communication, defense counsel confirmed to the plaintiff that the settlement achieved with the assistance of the mediator was (subject

5

to approval by the San Francisco Board of Supervisors and the Public Utilities Commission) a payment to the plaintiff of $250,000; on September 18, defense counsel advised the plaintiff that she would appear ex parte the following Monday (September 21) to obtain an order vacating the notice of settlement; on September 21, defense counsel appeared in court, and sought and obtained an ex parte order vacating the notice of settlement *and* an order maintaining the September 25 hearing date for the summary judgment motion; the court granted summary judgment on September 25 on the basis that the motion was unopposed; in doing so, the court denied a request to continue the hearing in which the plaintiff, who was then self-represented, stated that there had been an agreement to settle that was acknowledged by defense counsel, he was continuing to finalize the settlement, he wished to oppose the motion, and he was in the process of retaining a new attorney. (*Id.* at pp. 783-788.) In denying the continuance request, the trial court "cast[] aspersions at [the plaintiff] for the several continuances of the hearing," stating " 'I'm not going to continue anything. You had your opportunity. You didn't take it . . . . This is the end of it. [¶] . . . [¶] There was one extension after another . . . . There was a motion. You didn't oppose it. . . . I didn't get a piece of paper from you. It's over.' " (*Id.* at p. 791.) After judgment was entered, the plaintiff filed a motion for new trial on the ground, inter alia, of surprise because defense counsel's notice of ex parte appearance to vacate the notice of settlement had not indicated that the defendants would also seek to have the summary judgment motion heard on September 25. (*Id.* at p. 789.) The court denied the new trial motion. (*Id.* at p. 790.)

The appellate court reversed. It concluded that the trial court had abused its discretion in denying the plaintiff's request to continue the summary judgment hearing. (*Denton*, *supra*, 16 Cal.App.5th at pp. 791-794.) The Court of Appeal agreed with the plaintiff's analysis " 'that because [the defendants] refused to recognize a settlement it had previously asserted to exist, and from which [the plaintiff] had not withdrawn, he was surprised that the summary [judgment] motion was being heard on that date and he

needed additional time to seek new counsel to help oppose the motion if he could not settle. [The plaintiff] went from coasting toward approval of the settlement by the board of supervisors to having to rev up to oppose a summary judgment motion being heard in just four days, and to do so without counsel or access to his client file.' " (*Id.* at p. 792.) The court held that "[t]o the extent the [trial] court implied that [the plaintiff] was not diligent—'[t]here was one extension after another'—the implication [was] not supported by the record." (*Ibid.*) In addressing briefly the plaintiff's challenge to the denial of his motion for new trial, the *Denton* court found that the denial of the motion was an abuse of discretion because the circumstances the appellate court addressed in detail upon which it concluded that it was error to deny a continuance of the summary judgment hearing "demonstrated surprise, one of the bases of [the plaintiff's] new trial motion." (*Id.* at p. 794.)

As is readily apparent from the discussion above, and contrary to Carlton's assertion, the facts involved in *Denton* are not "similar" to those presented here. Unlike in *Denton*, here, Carlton was not faced with a last-minute crisis (after believing a settlement had been achieved) of having to file—without counsel, who had been recently discharged—a substantive opposition to a motion for summary judgment. Carlton, unlike the plaintiff in *Denton*, was not deprived of a trial as a result of questionable conduct by opposing counsel that included (1) leading him to believe that the case had settled, thereby obviating the need to oppose an oft-continued summary judgment motion, and (2) obtaining an ex parte order maintaining the hearing date on the motion that was beyond the scope of the relief indicated in counsel's ex parte notice. And unlike in *Denton*, where the trial court gave the plaintiff "short shrift" in his request for a continuance of the summary judgment hearing (*Denton*, *supra*, 16 Cal.App.5th at p. 792), and implied his lack of diligence without support from the record (*ibid.*), there is no record that Carlton was subjected to unfair conduct by the trial court here. Thus, *Denton*

7

offers no support for Carlton's contention that he established irregularity or surprise warranting the granting of his motion for new trial.

On page 23, the last paragraph, delete the second sentence "Statutory costs…", and insert the following:

Each party shall bear his respective costs on appeal.

There is no change in the judgment.

_____

BAMATTRE-MANOUKIAN, J.




_____

ELIA, ACTING P.J.





_____

DANNER, J.







*Leinen v. Carlton*
**H047030**


9

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| HENRY E. LEINEN,<br><br>    Plaintiff, Cross-Defendant and Respondent,<br><br>v.<br><br>DENNIS CARLTON,<br><br>    Defendant, Cross-Complainant and Appellant. | H047030<br>(Monterey County<br>Super. Ct. No. 16CV003850) |

Henry E. Leinen brought suit in December 2016 against Dennis Carlton, who cross-complained against Leinen.  A request to enter default on the second amended cross-complaint was entered against Leinen in May 2018.  In September 2018, the court scheduled a combined trial on the complaint and a prove-up hearing on the second amended cross-complaint for April 8, 2019.  The week before trial, Carlton filed an ex parte application to continue trial.  On April 4, the court denied the application after a hearing.  Carlton made a request on April 5 to appear telephonically for the April 8 trial, which was denied.  The case proceeded to trial on April 8 with no appearance by Carlton. The court found in favor of Carlton on the complaint.  Based upon the absence of evidence presented by Carlton, the court dismissed the second amended cross-complaint against Leinen.  Judgment was entered on April 10, 2019.  Carlton thereafter filed a

motion for new trial pursuant to section 667 of the Code of Civil Procedure,[1] which motion was denied.

On appeal from the judgment, Carlton contends that the court abused its discretion in denying (1) his pretrial application to continue trial, (2) his request for telephonic appearance at the trial, and (3) his postjudgment motion for new trial. We conclude that the court did not err, and we will affirm the judgment.

## I. PROCEDURAL BACKGROUND

### A. Pleadings

On December 5, 2016, Leinen filed a complaint against Carlton, which was later amended.[2] The record does not disclose the substance of the claims alleged by Leinen in this lawsuit.[3] Carlton filed a cross-complaint against Leinen, to which Leinen filed an answer. Carlton thereafter twice amended the cross-complaint. Carlton alleged seven causes of action in the second amended cross-complaint (hereafter, the cross-complaint), namely, claims for violation of statute, fraud, abuse of process, negligent misrepresentation, breach of contract, breach of implied covenant of good faith and fair dealing, financial elder abuse, and cancellation of written instrument. The claims arose out of Carlton's retention of Leinen to perform document preparation services in Carlton's federal case against one Eric Polansky in which Leinen allegedly deceived Carlton, provided faulty legal documents, and falsely held himself out to be a legal document assistant.

A request to enter default was entered against Leinen on the cross-complaint on May 14, 2018. Carlton thereafter filed a request for entry of default judgment in the total

---

[1] Further unspecified statutory references are to the Code of Civil Procedure.

[2] The complaint and amended complaint(s) are not part of the appellate record.

[3] Although the statement is not subject to confirmation in the appellate record, Leinen states in his respondent's brief that the claims he alleged in his complaint included "[d]efamation and [f]raud."

2

amount of $463,385.81. The record does not reflect that a default judgment was entered on that request. Leinen filed an objection to Carlton's request for entry of default judgment asserting, inter alia, that he had properly responded to the cross-complaint. The record does not reflect that Leinen ever filed a motion for relief from default with the court.

### B. Trial Setting and Request for Continuance

At a case management conference on September 18, 2018, the court scheduled a combined court trial and a prove-up hearing as to the cross-complaint for April 8, 2019.[4] The parties thereafter personally appeared on March 8, 2019, for a mandatory settlement conference. The case did not settle, and the court scheduled a trial management conference for April 5.

On April 3, Carlton filed an ex parte application for continuance of trial. In the application, Carlton requested a 180-day continuance, stating that (1) on March 28, he had been advised of an audiological medical appointment with the Veteran's Administration (VA) scheduled for April 4; (2) for the past two months, he had been undergoing treatment for a foot injury and he was "incapacitated . . . to the point of barely being able to walk to the store across the street from his home"; (3) an evaluation for possible foot surgery was scheduled for May 23; (4) his main witness, Emily Hickok, a prosecutor, would return from medical leave on June 10; (5) attorney David Parnie would return from vacation on July 29, and it was expected that he would substitute as Carlton's counsel at that time. Carlton submitted his declaration stating these circumstances in support of the application. In a filing the same day requesting that he be permitted to appear by telephone for hearing on April 4, Carlton declared that he was not a California

---

[4] All dates are hereafter 2019 unless otherwise stated.

resident and that he resided in Utah. The court granted Carlton's request for telephonic appearance at the ex parte hearing.

Leinen filed written opposition to Carlton's ex parte application to continue trial. He argued that (1) a hearing test does not constitute an illness warranting a trial continuance; (2) the witness Carlton claimed was unavailable was not material to the case; (3) Carlton was "again attempting to manipulate the court system by failing to follow the Code of Civil Procedure and the Rules of Court"; (4) the expectation that Carlton would substitute an attorney at some time in the future was not a basis for a continuance; and (5) there was no statement from a licensed physician to the effect that Carlton was incapacitated to the level that he could not travel or represent himself at trial.

The court conducted a hearing on Carlton's ex parte application for trial continuance on April 4; both parties appeared for the hearing. Carlton, appearing telephonically, argued that the chief reason for the request for continuance was "[his] health, not to take risks, and for the last few months [he] really [had not] been able to walk." The court inquired whether Carlton had "a doctor's note saying [he] can't appear for this trial." Leinen opposed the request, stating that Carlton had personally appeared in court less than a month earlier (on March 8) and was walking without a cane or a limp or otherwise evidencing any injury. Leinen also argued that Carlton could simply reschedule his audiology examination that was one of the stated reasons for continuing the trial. And Leinen stated further that Carlton had not complied with local superior court rules by filing a trial management statement.

The court denied the motion to continue. In denying the motion to continue trial, the court advised Carlton that "[i]f in fact your medical doctor feels you cannot travel, then you would need to submit some sort of proof to that effect. [¶] But this is a pretty old case. It's a 2016 case. That was when the complaint was filed. [¶] So at this point, without any sort of proof of your argument, I'm not going to grant your request." The

4

court, however, to accommodate Carlton to attend his audiology appointment on April 4, continued the trial management conference (scheduled for April 5) to April 8 prior to trial. The court also ordered Carlton to file a trial management report and brief before the conference.

### C. Request for Appearance at Trial by Telephone

On April 5, Carlton filed a request to appear by telephone at the April 8 trial management conference, trial on the complaint, and prove-up hearing on the cross-complaint. He stated that he resided in Utah. Under the heading "Other Extraordinary Circumstance," Carlton stated in his request: "[S]ee attached doctor's note (See Exhibit A). I am unable to walk and am extremely limited. I am taking pain pills that make it impossible for me to drive legally." The attached note from Kyle Jackman, DO, of North Ogden, Utah, stated in its entirety: "Dennis Carlton has Plantar Fasciitis and repetitive and excessive walking can exacerbate his symptoms. I would recommend that he decrease his episodes of long[-]term walking to help symptoms. [¶] This should be considered for 6 months from this date."[5] The court denied the request on the same day, finding "that an appearance by telephone for this hearing is not appropriate under the circumstances."[6]

### D. Trial

The case was called for trial management conference, court trial on the complaint, and default hearing on the cross-complaint on April 8.[7] The matter was heard by a

---

[5] Carlton also attached to his request a VA "Work Release" document signed by an unknown person with unknown medical qualifications. In it, the person stated that Carlton should be restricted to modified light duty for six months, "No weight bearing," that "[t]ravel [r]epresents an excessive burden at this time due to foot pain," and that he should "remain home until next evaluation . . . in six weeks."

[6] The April 5 request for telephonic appearance was decided by the same judge who ruled on the April 4 application to continue trial.

[7] There was no court reporter retained by Leinert for the proceedings.

5

different judge than the judge who decided the April 4 pretrial application to continue and the April 5 request for telephonic appearance. Leinen appeared; there was no appearance by Carlton. There was a recital in the minute order that Carlton's request to appear by telephone had been denied on April 5. The trial management conference was not held in light of Carlton's nonappearance. After receiving evidence from Leinen on the complaint, the court noted that Leinen had indicated there were no damages, and it granted judgment in favor of Carlton on the complaint. After calling the default hearing, based upon Carlton's having failed to appear and the absence of evidence having been presented, the court dismissed the cross-complaint.

A judgment on the minute order was entered by the court and mailed to the parties on April 10.

### E. Motion for New Trial

Carlton filed a motion for new trial. He claimed four statutory grounds for the motion under section 657. Carlton thereafter filed a memorandum of points and authorities and declaration in support of the new trial motion.[8] He attached to his motion the April 5 letter from Dr. Jackman and the April 5 work release (signed by an unknown person from the VA) that were attached to his April 5 request for telephonic appearance Carlton also attached a similar work release dated April 23 that was apparently signed by the same person from the VA.[9] He requested that the court grant a new trial and schedule

---

[8] These documents were not timely filed. (See § 659a [memorandum and other documents supporting new trial motion shall be filed within 10 days of the notice].) The court was therefore empowered, in its discretion, to deny the motion without a hearing on the merits. (Rule 3.1600(b).) Although the trial court noted that Carlton's papers had not been timely filed, it nonetheless heard Carlton's motion on the merits.

[9] Other than Carlton's statement in his declaration that his physical issues "[began] in January 2019," the motion for new trial presented no new facts beyond what Carlton had stated in his prior application to continue trial and in his April 5 request for telephonic appearance. In reply papers filed on May 21, Carlton provided additional

6

it out approximately six months because of "medical issues and requirements from the doctors and the demanding physical therapy through August 2019."

Leinen filed opposition to the motion. He objected to the memorandum and declaration in support of the motion for new trial on the ground that they were not timely filed. Leinen also argued that Carlton's medical condition, plantar fasciitis, is not a recognized disability.

The court conducted a hearing on the motion for new trial on June 14. The judge who had presided over the April 8 trial on the complaint and prove-up on the cross-complaint heard the new trial motion. Carlton argued that he should be permitted to have his day in court on the cross-complaint, and that he had submitted documents to the court concerning his medical issues that had prevented his personal appearance at trial. The court found that there were no statutory grounds for Carlton's motion and therefore denied the motion for new trial on June 14.

Carlton filed a timely notice of appeal from the judgment entered on April 8, 2019. Carlton's challenge to the order denying his motion to continue trial is not a subject for direct appeal but is reviewable on an appeal from the judgment. (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527.) His challenge to the denial of his motion for new trial is cognizable on appeal; although an order denying new trial is not itself appealable, it is reviewable from an appeal upon the underlying judgment. (*Walker v. Los Angeles County Metro. Transp. Auth.* (2005) 35 Cal.4th 15, 18.)

---

details concerning his foot injury and other physical issues; those matters were not presented by Carlton in a declaration under penalty of perjury.

## II.    DISCUSSION

### A.    Applicable Law and Standards of Review

#### 1.    *Motions to Continue Trial*

Trial dates assigned for cases "are firm." (Cal. Rules of Court, rule 3.1332.)[10] "All parties and their counsel must regard the date set for trial as certain." (*Ibid.*) A party seeking a continuance of trial must do so by formal motion or ex parte application supported by declarations "as soon as reasonably practical once the necessity for the continuance is discovered." (Rule 3.1332(b).) Continuance motions "are disfavored" under the law. (Rule 3.1332(c); see *County of San Bernardino v. Doria Mining & Engineering Corp.* (1977) 72 Cal.App.3d 776, 781 ["there is no policy in this state of indulgence or liberality in favor of parties seeking continuances," and " 'continuances [should] be granted sparingly' "].) The party seeking a continuance must make "an affirmative showing of good cause requiring the continuance." (Rule 3.1332(c).)

The California Rules of Court provide a nonexclusive list of circumstances that may constitute good cause that includes "[t]he unavailability of a party because of death, illness, or other excusable circumstances." (Rule 3.1332(c)(2).) The court "must consider all the facts and circumstances that are relevant to the determination [of good cause,]" including the proximity of the date of trial to the motion and the length of the requested continuance. (Rule 3.1332(d)(1), (3); see *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1126, disapproved of on other grounds *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 196, fn. 8.)

The decision to grant or deny a motion to continue is vested in "the sound discretion of the trial court. [Citation.] The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court. [Citation.] A reviewing court may not

---

[10] All unspecified rule references are to the California Rules of Court.

disturb the exercise of discretion by a trial court in the absence of a clear abuse thereof appearing in the record. [Citation.]" (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984-985 (*Forthmann*).) The party challenging the court's order on the motion to continue bears the burden of showing from the record that such abuse of discretion occurred. (*Id.* at p. 985.)

### 2. *Requests for Telephonic Appearance*

Generally speaking, all parties are required to personally appear in court at certain proceedings, including "[t]rials, hearings, and proceedings at which witnesses are expected to testify," and "[t]rial management conferences." (Rule 3.670(e)(1)(A), (D).) However, "[t]he court may permit a party to appear by telephone at a hearing, conference, or proceeding under [rule 3.670](e) if the court determines that a telephone appearance is appropriate." (Rule 3.670(f)(3).) Thus, the court "has discretion to permit a telephonic appearance in lieu of a personal appearance. [Citation.] Conversely, the court may require a personal appearance if the court determines 'on a hearing-by-hearing basis that a personal appearance would materially assist in the determination of the proceedings . . . .' (Rule 3.670(f)(2).)" (*Davis v. Superior Court* (2020) 50 Cal.App.5th 607, 617 (*Davis*).)

### 3. *Motions for New Trial*

The court may order a new trial on all or part of the issues upon motion of the aggrieved party upon a showing that the ground for the motion materially affected the rights of the moving party. (§ 657.) A motion for new trial may be brought to challenge a judgment, whether based upon fact or law. (*Carney v. Simmonds* (1957) 49 Cal.2d 84, 90; see also *ibid.* [motion for new trial appropriate to challenge judgment of dismissal].)

"The right to a new trial is purely statutory, and a motion for a new trial can be granted only on one of the grounds enumerated in the statute. [Citation.]" (*Fomco, Inc. v. Joe Maggio, Inc.* (1961) 55 Cal.2d 162, 166.) Since a new trial motion is a creature of statute, "the procedural steps prescribed by law for making and determining such a

9

motion are mandatory and must be strictly followed [citations]." (*Mercer v. Perez* (1968) 68 Cal.2d 104, 118.)

Therefore, a motion for new trial must be based upon section 657 one of the enumerated bases. That statute identifies "seven grounds for such a motion: (1) 'Irregularity in the proceedings'; (2) ' Misconduct of the jury'; (3) 'Accident or surprise'; (4) 'Newly discovered evidence'; (5) 'Excessive or inadequate damages'; (6) 'Insufficiency of the evidence'; and (7) 'Error in law.' " (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 633.) Only two of those subdivisions are identified on appeal by Carlton as grounds upon which the trial court should have granted the new trial motion, namely, "[i]rregularity in the proceedings of the court" (§ 657, subd. (1)), and "surprise, which ordinary prudence could not have guarded against" (*id.* at subd. (3)).

A ruling by the trial court on a new trial motion is reviewed for abuse of discretion. "A trial court has broad discretion in ruling on a new trial motion, and the court's exercise of discretion is accorded great deference on appeal. [Citation.] An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.]" (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 752 (*Fassberg Construction*).)

### C. Request for Judicial Notice

After he filed his appellate briefs, Carlton filed a request for judicial notice, or, in the alternative, to take evidence. He requested that this court take judicial notice or receive into evidence three matters: (1) an obituary concerning attorney David Parnie; (2) a July 11, 2019 posting on Facebook concerning a Dr. Justin Jex of the VA Salt Lake City Health Care System; and (3) a LinkedIn posting of June 16, 2020, concerning Justin Jex, identified as "Section Cheif [*sic*] VA at SLC Vetrans [*sic*] Administration." Carlton

contends that these matters are subject to judicial notice (Evid. Code, §§ 452, subd. (g), (h); 459), or may be offered as electronic evidence (rule 8.252(c)).

We will deny Carlton's request for judicial notice. As to the David Parnie obituary, the request is improper because the newspaper article is offered to establish the truth of its content, i.e., that Parnie passed away on August 9, 2019. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1141, fn. 6 (*Zelig*).) Further, Carlton offers no reasoned argument concerning the relevance of the article; it is not relevant to the disposition of this appeal. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 (*Mangini*) ["only *relevant* material may be [judicially] noticed"], overruled on another ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276.) As to the two documents involving Dr. Jex, we have no way of determining their relevance. While it is represented in Carlton's request that Dr. Jex is the person who signed the Work Release Form that was included in Carlton's April 5, 2019 request for telephonic appearance, there is nothing in the appellate record so indicating. At best, there is an illegible signature from an unidentified person on the document submitted to the superior court. We deny the request for judicial notice of these documents on the ground that their relevance has not been shown. (*Mangini*, *supra*, at p. 1063.) Moreover, assuming Dr. Jex was in fact the person who signed the work release, there is no reason why Carlton could not have presented this fact, including the person's qualifications, to the trial court. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [appellate courts generally do not take judicial notice of records not presented to the lower court].) Lastly, it is apparent that Carlton seeks judicial notice of these articles to establish the truth of the matters contained in them, i.e., Dr. Jax's professional qualifications and affiliation. Judicial notice of the articles for the truth of the matters stated in them is improper. (See *Voris v. Lampert* (2019) 7 Cal.5th 1141, 1147, fn. 5 [court denies judicial notice of articles offered for truth of their contents].)

11

We will also deny the alternative request to take additional evidence. For the reasons stated above, the three documents Carlton requests that we receive as evidence are not admissible as proof of the truth of the contents contained in them. (*Zelig*, *supra*, 27 Cal.4th at p. 1141, fn. 6.) We will not exercise our discretion here to take additional evidence. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [appellate court's discretion to make factual findings " 'should be exercised sparingly' " and only where there are "*exceptional circumstances*"].)

### D. No Abuse of Discretion in Denial of Continuance Application

Carlton argues that the trial court prejudicially erred in denying his ex parte application to continue. He contends that he "satisfied several of the criteria set forth in" rule 3.1332(c) upon which a finding of good cause for continuance may be made. Carlton argues further that other factors, such as the absence of prior continuances and Leinen's failure to show that he would be prejudiced by postponing the trial, militated in favor of granting his application. In arguing that the trial court erred, he properly acknowledges, citing *Jurado v. Toys "R" Us, Inc.* (1993) 12 Cal.App.4th 1615, 1617 (*Jurado*), that "[t]he decision whether to grant a motion for a continuance is within the trial court's discretion and will not be disturbed on appeal absent a clear showing of abuse of discretion."[11]

Carlton identifies on appeal several circumstances specified in rule 3.1332(c) that he claims supported good cause for the requested continuance. Quoting rule 3.1332(c),

---

[11] Leinen submitted a respondent's brief that largely contains alleged facts and matters of procedure that are not supported by appropriate citations to the appellate record. Leinen's omissions constitute a violation of appellate procedure requiring that a party support all factual and procedural assertions with proper citations to the record. (Rule 8.204(a)(1)(C) [every brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].) Because this rule *requires* that all assertions concerning facts or procedure contain a supporting record reference, we will disregard any such unsupported contentions here. (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970.)

these circumstances include "(1) [t]he unavailability of an essential lay . . . witness because of death, illness, or other excusable circumstances"; [¶] "(2) [t]he unavailability of a party because of death, illness, or other excusable circumstances"; [¶] "(3) [t]he unavailability of trial counsel because of death, illness, or other excusable circumstances"; and [¶] "(4) [t]he substitution of trial counsel, but only where there is an affirmative showing that the substitution is required in the interests of justice." (*Ibid.*) As we will discuss, Carlton made no showing as to three of the circumstances. Only one (the party's illness) provided any colorable ground for a continuance.

As to the first ground—"unavailability of an essential lay . . . witness" (rule 3.1332(c)(1))—Carlton stated in his application that Emily Hickok, a prosecutor, would return from medical leave on June 10. He identified, without any elaboration, Hickok as his "main witness." Carlton provided no information regarding this witness's supposed unavailability, the substance of her anticipated testimony, its relevance and importance of the testimony to the prove-up hearing on the cross-complaint, any efforts Carlton made to secure that testimony, or whether there was alternative proof of the matters to which the witness could testify. (See § 595.4 [continuance request due to witness unavailability requires a declaration "showing the materiality of the evidence . . . and that due diligence has been used to procure it"]; see also see also *Jennings v. American President Lines* (1943) 61 Cal.App.2d 417, 426 [party seeking continuance "was bound to show what the witness . . . would state if called as a witness"].) Carlton therefore made no showing for a continuance based upon the unavailability of an essential lay witness.

The third and fourth grounds—"[t]he unavailability of trial counsel" (rule 3.1332(c)(3)) and "[t]he substitution of trial counsel" (rule 3.1332(c)(4))—had no application to Carlton's application to continue. Since Carlton was representing himself when he filed his application, "[t]he unavailability of trial counsel" circumstance was obviously inapplicable. Further, Carlton's unsupported statement that an attorney, David

13

Parnie, would be returning from vacation nearly four months hence (on July 29), and he "was expected to substitute in as counsel"—particularly absent any indication of these matters from Parnie himself—provided no factual basis for a continuance under rule 3.1332(c)(4).

The unavailability of a party, Carlton, due to illness under rule 3.1332(c)(1) provided the only arguable ground for his continuance request. In his ex parte application, Carlton stated that he had been undergoing treatment for a foot injury for the two months prior to the application, the injury had left him "incapacitated," and he was "barely . . . able to walk to the store across the street from his home." He stated further that he had an appointment for a foot surgery evaluation on May 23.[12] And Carlton indicated that he was told by a doctor (unnamed in his application) during a medical appointment on March 21 that he should not travel because of the foot injury. At the hearing on his application, Carlton argued that he required a continuance because of "[his] health, not to take risks, and for the last few months [he] really [had not] been able to walk." He argued it was "too risky to be at hearings." In response to the court's question about whether he had a note from the doctor stating that he could not appear for trial, Carlton responded, "This was never brought up with my doctor about my trial. It was about my mobility." The court, in denying the application, stated that "without any sort of proof of your argument, I'm not going to grant your request."

The trial court did not abuse its discretion in denying the continuance request. Carlton was required to establish good cause to support the request, and the trial court did not err in concluding from all of the circumstances that he had failed to do so. Carlton did not present any proof that he was physically unable to personally attend the trial. The court could have properly found as inadequate the general statements in his application

---

[12] Carlton makes these identical four statements without elaboration seven times in his application to continue trial (notice, memorandum, and declaration).

14

that his foot injury had left him "incapacitated" and "barely able to walk," and his statement at the hearing that it was "too risky" for him to attend trial.

Additionally, it was appropriate for the court to rely on the lack of timeliness of Carlton's application as a factor supporting the denial of the continuance request. A motion to continue must be made "as soon as reasonably practical once the necessity for the continuance is discovered." (Rule 3.1332(b).) Although he was aware of the trial date in September 2018, Carlton waited nearly seven months—and until only three business days before trial—to file the continuance request. And taking at face value Carlton's statement in the request that he had been receiving treatment for his foot for two months, and his representation at the April 4 hearing that "for the last few months [he] really [had not] been able to walk," he nonetheless, despite knowing about this health issue, waited until the eve of trial to file his application. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823 [denial of continuance proper where moving party had known for more than a month of the reason for the continuance, i.e., potential unavailability of her counsel].) The trial court highlighted this problem with the application, advising Carlton "this is a trial date[;] you've known about it for a long time." The untimeliness of Carlton's application to continue the trial was a significant factor the trial court considered in its denial of the continuance request.[13]

Further, contrary to what is implied by Carlton, a party's illness does not *require* the granting of a continuance motion. (*Kalmus v. Kalmus* (1951) 103 Cal.App.2d 405, 414 (*Kalmus*), disapproved on other grounds in *Hudson v. Hudson* (1959) 52 Cal.2d 735,

---

[13] Although these specifics were not presented to the court at the time of the application to continue trial, in Carlton's later motion for new trial, he stated that his "medical inability and physical walking limitations . . . [began] in January 2019." He confirmed at the hearing on the new trial motion that he had been injured since January 2019. This knowledge of his medical condition notwithstanding, Carlton waited approximately three months to file the application to continue, doing so on the eve of trial.

15

739.) Where the party seeks a continuance because of his or her illness, "the court may take into consideration the legal sufficiency of the showing in support of the motion and the good faith of the moving party. . . . [I]t is for the trial court in all cases . . . to determine whether or not the circumstances shown are such as to make it proper that a continuance be granted, and its conclusion thereon will not be disturbed unless there has been a plain abuse of discretion." (*Kalmus*, *supra*, at p. 414; see *ibid.* [no abuse of discretion where trial court denied motion for continuance based upon claimed disabling illness, concluding that party was physically able to travel from Massachusetts to California to participate in trial].)  Here, the court specifically highlighted the legal insufficiency of Carlton's showing, stating that he had presented no proof of his position, such as a note from a physician.

Carlton cites *Pacific Gas & Elec. Co. v. Taylor* (1921) 52 Cal.App. 307 (*Taylor*), a condemnation action, to support his claim that the court abused its discretion by denying his continuance request.  In *Taylor*, the defendants requested a trial continuance based upon the unavailability of one defendant, who was then on the East Coast and was ill. (*Id.* at p. 308.)  Defense counsel submitted an affidavit stating, inter alia, that the defendant "was in the city of Boston at the time of the trial; that he was detained there on account of a serious illness; that very important business required his attention at that place, and for that purpose he left California . . . before the case had been set for trial; that [the defendant] was the only person familiar with the facts constituting the defense, and the only person who knew the whereabouts of any of the witnesses that he desired to be called on his behalf; that it would be necessary to [call] witnesses . . . to give an intelligent estimate of the value of the property to be taken and that the aid of [the defendant] was needed for this purpose." (*Ibid.*)  Reversing the judgment after the trial court denied a continuance, the appellate court concluded that the defendants should have had an opportunity to defend the case on the merits, finding their showing in the motion

16

"persuasive . . . and . . . find[ing] in the record no evidence of the want of diligence or good faith on the part of the moving defendant." (*Id.* at p. 310.)

*Taylor*, *supra*, 52 Cal.App. 307 is distinguishable. There, no trial date had been set at the time the defendant left California for the East Coast, and there was no indication of a lack of diligence in bringing the motion to continue. Here, Carlton had seven months' notice of the trial date, and had been aware of the circumstances allegedly requiring a continuance (his foot injury) two or three months before filing the ex parte application on the eve of trial. Further, Carlton emphasizes that in *Taylor*, the court reasoned that " 'where a party's presence at the trial is indispensable and the character of his illness is such as to render his presence at the time impossible[,] a continuance should be granted," (*Id.* at pp. 310-311.) Here, Carlton did not show that his presence at the April 8 trial management conference, trial, and prove-up hearing was " 'impossible.' " *Taylor* does not support Carlton's claim of error.

Carlton also relies on *Betts Spring Co. v. Jardine Machinery Co.* (1914) 23 Cal.App. 705 (*Betts Spring*). There, defense counsel submitted an affidavit in support of a trial continuance indicating that the defendant, "who was the only witness to prove the matters and things set forth in his defense," had suffered a stroke three months before trial; had thereafter on the advice of his physician traveled to Europe to convalesce and was at the time of trial in Scotland; and would not be returning to San Francisco for two months. (*Id.* at p. 706.) The appellate court reversed the judgment, concluding under the circumstances—including the fact that the defendant had presented with a serious illness from which he had traveled to Europe to seek recovery, the undisputed nature of the claims in the affidavit, the absence of a counter-affidavit, the absence of evidence of the defendant's lack of good faith, and the indication that the plaintiff had not been diligent in prosecuting the case to trial—that the continuance motion should have been granted. (*Id.* at pp. 706-707.)

17

*Betts Springs*, *supra*, 23 Cal.App. 705 is also distinguishable. With deference to Carlton's challenges, a foot injury making walking difficult and residence in Utah are much different circumstances than suffering a stroke and convalescing in Europe for a period of months to recover. Further, unlike in *Betts Springs*, here there was specific opposition by Leinen to the claimed medical ground for the continuance. In his written opposition, Leinen challenged Carlton's application, arguing that he was "attempting to manipulate the court system," and Carlton had not submitted physician's statement that Carlton was so incapacitated he could not travel or represent himself at trial. And at the hearing, Leinen questioned the nature and extent of Carlton's claimed medical condition, arguing that one month earlier—contrary to his claim in his application that the foot injury had been incapacitating for two months—Carlton had personally appeared at a March 8 hearing where he was walking without a cane or a limp or otherwise evidencing any injury. Also unlike in *Betts Springs*, there is no indication in the record that Leinen had not been diligent in prosecuting his complaint.

The record shows that, after consideration of the factors relevant to Carlton's application, the trial court properly denied his request to continue the trial management conference, trial, and prove-up hearing. There has been no "clear showing of abused discretion" in connection with the denial of the continuance request. (*Juradoi*, *supra*, 12 Cal.App.4th at p. 1617.) Carlton failed to meet his burden on appeal of establishing that the trial court committed a clear abuse of discretion. (*Forthmann*, *supra*, 97 Cal.App.4th at p. 985.)[14]

---

[14] Carlton states that "out of an abundance of caution," he was serving his appellate brief upon the State Solicitor General because, although Carlton did not make application to the trial court for an accommodation, "he would have been authorized under rule 1.100" to have done so. We do not understand this statement to be a claim in this appeal that the trial court erred because it refused an unrequested accommodation to Carlton.

## E. Denial of Telephonic Appearance Request Was Not Error

We address briefly Carlton's claim that it "was manifestly unjust" for the court to have denied his April 5 request for telephonic appearance at the April 8 trial management conference, trial on the complaint, and prove-up hearing on the cross-complaint. He contends that such denial was contrary to the court's prior April 4 order denying the ex parte application   In so arguing, Carlton contends—selectively quoting from the reporter's transcript of the ex parte hearing—that the court stated that he "would be authorized to appear telephonically to ask for [a continuance] if he produced 'some sort of proof' of his inability to travel."

We do not read the record as showing any inconsistency between the court's April 4 denial of a continuance and the April 5 denial of the request for telephonic appearance. The April 4 minute order denying the continuance application did not indicate that Carlton *would be* allowed to appear by telephone on April 8 if he submitted a physician's note prior to that time. Rather, the order provided:  "Defendant may submit a physician's note to the trial judge with a request that he appear telephonically for the Trial Management Conference and that the Court continue the trial date."  And the reporter's transcript reflects that at the April 4 hearing, the court advised Carlton that (1) it was denying his continuance request; (2) the court "would consider" a written note from a doctor saying [Carlton] cannot travel"; (3) Carlton would be required to appear on April 8 if he intended "to go ahead with the trial"; and (4) if Carlton filed a physician's note, the trial judge could address it on April 8.

Moreover, Carlton's contention that it was "manifestly unjust" to deny his April 5 request to appear telephonically on April 8 because what was involved was simply a

19

"prove up hearing" is without merit.[15]  There were *three* matters scheduled for April 8: the trial management conference, the trial on the complaint, and the prove-up hearing on the cross-complaint.  Under the circumstances, the denial of the request for telephonic appearance at the conference, trial, and prove-up hearing was not "manifestly unjust."

The general rule is that all parties are required to personally appear in court at certain proceedings, including "[t]rials, hearings, and proceedings at which witnesses are expected to testify," and "[t]rial management conferences."  (Rule 3.670(e)(1)(A), (D).)  The trial court here found that Carlton's telephonic appearance on April 8 for a combined trial management conference, trial on the complaint, and prove-up hearing on the cross-complaint where testimony by witnesses was anticipated "[was] not appropriate under the circumstances."  There was no abuse of discretion in the court's making this ruling. (Rule 3.670(f)(3); *Davis*, *supra*, 50 Cal.App.5th at p. 617.)

### F.      No Abuse of Discretion in Denying New Trial Motion

Carlton below asserted four statutory grounds for the new trial motion, namely, "[i]rregularity in the proceedings of the Court" (§ 657, subd. (1)), "[a]ccident or surprise" (*id.*, subd. (3)), "[e]xcessive or inadequate damages" (*id.*, subd. (5)), and "[n]ewly discovered evidence" (*id.*, subd. (4)).  In his memorandum of points and authorities, he failed to present any argument supporting his claim that a new trial should have been granted *under the circumstances of his case* based upon any of the four statutory grounds he listed.  Carlton's accompanying declaration did not cure this defect.  He declared in a most conclusory fashion that the denial of his April 5 request for a telephonic appearance because of his "medical inability and physical walking limitations" constituted "a surprise that I could not have foreseen and that I had no control over," "irregularity in the

---

[15] Similarly, Carlton implied that it was "prejudicial error" to deny his April 4 continuance request because the April 8 hearing involved only an uncontested prove-up hearing on the cross-complaint.

20

proceedings of the court," and "[a]ccident or surprise, which ordinary prudence could not have guarded against."

Carlton argues on appeal that the court erred in denying his motion for new trial. He contends that the court's denial of the new trial motion was founded on the reasoning that the physician letters submitted by Carlton with his April 5 request for telephonic appearance were insufficient because they were not under penalty of perjury. Carlton argues that this reasoning was flawed because the court—a different judge than the judge who heard the motion for new trial—in denying the continuance request on April 4, suggested that Carlton needed to present proof of his medical circumstances with a "doctor's note," not a sworn declaration. The notes Carlton submitted on April 5 with his request for telephonic appearance, he argues, were therefore sufficient. He claims that the court's denial of the new trial motion upon this reasoning constituted "both a surprise and an irregularity falling within section 657 of the Code of Civil Procedure entitling a party to a new trial." The claim of error is without merit.

First, Carlton fails to develop the argument that the trial court abused its discretion in denying the motion for new trial. In addressing Carlton's motion for new trial, the trial court was asked to consider whether the denial of the April 4 application to continue trial and the denial of the April 5 request for telephonic appearance were improper based upon one or more enumerated grounds in section 657. Carlton on appeal claims that the statutory grounds of irregularity (§ 657, subd. (1)) and surprise (*id.*, subd. (3)) apply in this instance. But he fails to explain how either statutory ground applies here, and he provides no legal authority in support of the appellate claim. An appellate court has no obligation to "develop the appellants' arguments for them." (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1.)

Second, Carlton's position cites in isolation one part of the trial court's comments stated on the record at the hearing on the motion. The court, in fact, provided detailed reasoning in addressing the prior denial of Carlton's ex parte application to continue

21

before it denied the new trial motion.  The court noted that the April 8, 2019 trial had been scheduled on September 18, 2018, the parties had appeared at a mandatory settlement conference on March 8, one month before the scheduled trial, and that no motion to continue was filed at that time.  The court recited further that (1) Carlton had filed a request to continue trial on April 4 (the day before the assigned trial management conference); (2) the continuance request was denied on April 4; (3) the judge who heard and denied the request to continue permitted Carlton to file a request for telephonic appearance at trial; (4) Carlton filed a request for telephonic appearance, and the judge, after reviewing the documents provided, denied the request, concluding that there was insufficient proof of medical inability to travel and appear for trial; (5) Carlton thus knew on April 5 that his request to appear by telephone had been denied and that he needed to personally appear on April 8; (6) Carlton did not personally appear on April 8 for trial, no evidence was presented at a prove-up hearing on the cross-complaint, and the court did not enter judgment in Carlton's favor on the cross-complaint.  The court therefore denied the motion for new trial, finding that there were no statutory grounds for the motion. Examination of the record discloses no abuse of discretion in denying the motion.

Third, to the extent that the court *may have* believed that the physician letters submitted by Carlton on April 5 with his request for telephonic appearance were insufficient because they were not under penalty of perjury, this does not furnish a basis for finding error.  The prior matters being considered at the new trial motion—the pretrial continuance request and request to appear telephonically—were heard and denied *by a different judge*.  The fact that the judge hearing the postjudgment motion for new trial *may have* considered the physician letters submitted before trial insufficient because they were not under penalty of perjury is irrelevant.  There is nothing in the record indicating that the judge who considered the pretrial request for telephonic appearance denied the request because the physician notes submitted were not under penalty of perjury. Moreover, to the extent the judge hearing the new trial motion was critical of the

22

physician letters because they were not under penalty of perjury, those comments do not justify a finding of error. "[W]e are not bound by the trial court's stated reasons in support of its ruling; we review the ruling, not its rationale. [Citation.]" (*Limited Stores, Inc. v. Franchise Tax Bd.* (2007) 152 Cal.App.4th 1491, 1496.)

Fourth, we have concluded, *ante*, that the trial court did not abuse its discretion in denying Carlton's April 4 ex parte application to continue, and did not abuse its discretion by denying his April 5 request for telephonic appearance at the April 8 trial management conference, trial, and prove-up hearing. It therefore follows that it was not error for the court to have later denied Carlton's postjudgment motion for new trial challenging those rulings.

The trial court here did not abuse the "broad discretion [vested in it] in ruling on a new trial motion." (*Fassberg*, *supra*, 152 Cal.App.4th at p. 752.) Its decision, "in light of the applicable law and considering all of the relevant circumstances, . . . [did not] exceed[] the bounds of reason [that] result[ed] in a miscarriage of justice. [Citations.]" (*Ibid.*)

## III.   DISPOSITION

The judgment of April 10, 2019, and the order denying the motion for new trial are affirmed. Statutory costs are awarded to respondent.

_____
BAMATTRE-MANOUKIAN, J.


WE CONCUR:




_____
ELIA, ACTING P.J.




_____
DANNER, J.




*Leinen v. Carlton*
**H047030**

24